11 STEWART, J.
The appellant, James Haacker, was demoted from sergeant, placed on special leave pending the completion of a criminal investigation of his girlfriend, Tracy Walker, and given a 15 day suspension by the Shreveport Police Department (“SPD”). Haacker appealed to the Municipal Fire and Civil Service Board (“Board”). The Board reversed the placement of Haacker on special leave pending the outcome of Walker’s criminal charges. However, the Board upheld the demotion and suspension. Haacker appealed to the First Judicial Court which upheld the Board’s decision. This appeal followed. Haacker requests this court to reverse the decision of the Board or remand the case for a fair and impartial hearing that comports with due process. Haacker makes several assignments of error regarding the Board’s actions. However, we find the lack of due process accorded Mr. Haacker to be dispositive of this matter, and for the reasons set forth herein, we reverse the trial court’s judgment.
FACTS
In June of 1998, James Haacker, an officer with the SPD, was charged by the Chief of Police Steven Prator with use of poor judgment in connection with his relationship with Tracy Walker. Haacker had been involved with Walker since 1994. Shortly after their relationship began, Haacker learned that Walker had been convicted of a felony, but was later pardoned. After several inquiries to the Internal Affairs Bureau of the SPD regarding his relationship with Walker, Haacker was informed that he was not in violation of SPD regulations prohibiting “avoidable” officer associations with convicted felons because Walker had been pardoned. Haacker and Walker later became live-in lovers. However, following a dispute, Walker moved out of their home in May of 1997, but continued her relationship with Haacker. In July of 1997, Walker was again arrested by the SPD on allegations that she had stolen items from Paula Springer Sneed.
[^Following Walker’s arrest, the SPD received a complaint from Ms. Ute Horne about Haacker’s relationship with Walker. Haacker was again informed that his relationship with Walker was not in violation of SPD policy because of the “previous relationship” clause in SPD policy 100.31.
Walker was arrested a third time in October of 1997 by the SPD on allegations of theft. After she was released on bail, she again moved in with Haacker in January of 1998. On February 13, 1998, Haacker was promoted from the rank of corporal to the rank of sergeant by Chief Prator. In April of 1998, Haacker was *703 informed that his application for transfer to the police academy was approved by Chief Prator and would be effective on May 1,1998.
However, in April of 1998, the SPD received an anonymous written complaint about Haacker’s relationship with Walker. The writer cited Walker’s arrest record, and wrote “Sgt. Haacker’s girlfriend has been arrested thrice. Investigate before newspaper and TV.” Following this last complaint, Chief Prator demanded that Haacker explain his relationship with Walker. Haacker viewed these complaints as an attempt to tarnish his image in the eyes of his superiors. Thus, on April 29, 1998, Haacker approached Ute Horne, who had previously filed a complaint against him because of his involvement with Walker, and asked her if she was responsible for this last complaint against him. After Horne denied that she was responsible for the complaint, Haacker returned home. On April 30, 1998, Haacker was informed that his transfer to the police academy had been postponed, and he was ordered to report to the Internal Affairs Bureau for a taped interview. During the meeting with the Internal Affairs Bureau, Haacker was informed that Horne had filed a complaint against him for asking her if she had filed the anonymous complaint.
On June 5, 1998, Haacker, who was off duty, and in his front yard, saw Corporal Alan Pierce of the SPD who was in Haacker’s neighborhood [¡¡investigating a call concerning a stolen bike. During the conversation, Haacker informed Pierce that there was a white van illegally parked on the corner of the block that posed a danger because it blocked the view of approaching cars. Pierce investigated the complaint and wrote a parking ticket. The van belonged to Paula Sneed who paid the ticket under protest. Soon thereafter, Sneed filed a complaint with the Internal Affairs Bureau against Haacker. The complaint was investigated by Sgt. Glenn Mitchell. When Sgt. Mitchell went to Sneed’s home, he noticed that the van was illegally parked again.
On June 23, 1998, Haacker appeared before Chief Prator for a predisciplinary conference. Prator informed Haacker that he was displeased with his relationship with Walker because he believed it violated SPD policy. Haacker told Prator that he intended to marry Walker as soon as she resolved her legal problems. Prator told Haacker that he had no legal obligation to the woman because she was “just a live-in girlfriend.” Prator concluded the relationship was avoidable because Haacker and Walker were not married. Consequently, Haacker was given a 15-day suspension without pay and a loss of seniority from June 23, 1998, to July 7, 1998; a demotion from the rank of sergeant to corporal, with corresponding reduction in pay; and effective July 7, 1998, placement on “special leave” without pay pending the resolution of Ms. Walker’s criminal charges. In July of 1998, Walker settled her legal problems by pleading guilty to two misdemeanors. On July 18, 1998, Haacker and Walker were married.
On July 24, 1998, Haacker appeared before the Civil Service Board for a hearing regarding the disciplinary actions taken against him by the SPD. Twenty minutes before the hearing Haacker was given the official documents concerning his disciplinary record. Included in these documents was the “Predisciplinary Conference Record.” However, this document, which was presented as a true copy by the City of Shreveport (“City”) had been altered. An SPD police officer | testified that she had added the charges of “Abuse of Position” and “Unbecoming Conduct” after the pre-disciplinary meeting was over. This amended document was accepted by the *704 Board over the objection of Haacker’s attorney. At the close of the hearing, the Board upheld the decision to demote Haacker and suspend him for fifteen days.
DISCUSSION
The appellant has raised many issues for review by this court. However, we find it necessary to only deal with one issue to resolve this case — the failure of the City to follow LSA-R.S. 33:2495 in violation of the plaintiffs due process rights. The standard of appellate review of findings of fact in Civil Service Commission cases necessarily must be the same as those which exist with regard to cases arising in the trial court. Babers v. City of Shreveport, 621 So.2d 88 (La.App. 2d Cir.1993), writ denied, 629 So.2d 349 (La.1993) citing Department of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981), writ denied, 406 So.2d 626 (La.1981). The appellate court should not disturb the factual findings of the trier of fact in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989), writ denied, 561 So.2d 105 (La.1990). The trial court committed manifest error by affirming the decision of the Board.
La.R.S. 33:2495, which governs the em-' ployment of civil service employees during their probation or “working test” period, provides in pertinent part:
(B)(1)(a) ... Any employee who has served at least three but less than six months of his working test for any given position may be removed therefrom only with the prior approval of the board ... (Emphasis added).
It is undisputed that Mr. Haacker was in the fourth month of his working test period when he was demoted and suspended by Chief Prator. The approval of the Board was not sought before removing Mr. Haacker. The City asserts that such error was harmless. We disagree.
| .(Under the municipal civil service scheme, certain jobs with municipalities are designated to be part of the classified service. La.R.S. 33:2481. When so designated those jobs fall under the jurisdiction of local municipal fire and police civil service boards. La.R.S. 33:2475-2477. The local board maintains a list of persons eligible for appointment to a civil service position. La.R.S. 33:2491. These lists are composed of persons who have passed competitive examinations administered by civil service. La.R.S. 33:2492. When the hiring agency of the municipality proposes to fill a position in the classified service, that agency or appointing authority acquires the list of persons eligible for appointment from the board and must fill the vacancy from that list. La.R.S. 33:2494. A person appointed in this manner may be tested by a “working test” before being confirmed as a regular or permanent employee. La.R.S. 33:2495. This test shall continue for not less than six nor more than twelve months. La.R.S. 33:2495. “Any employee who has served at least three but less than six months of his working test for any given position may be removed therefrom only with the prior approval of the board”. La.R.S. 33:2495. It is the quoted language which is at issue here.
Due process requirements are relevant only when a property interest has been created. See, Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Franklin v. City of Baton Rouge, 555 So.2d 18 (La.App. 1st Cir.1989). “Property interest are not created by the Constitution, ‘they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law’.” Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 at 1491, 84 L.Ed.2d 494 (1985). “While the legisla *705 ture may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred without appropriate procedural safegrounds.” Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633 at 1650, 40 L.Ed.2d 15 (1974).
IfiA careful perusal of the statutes governing termination of classified employees reveals a scheme that provides a property interest for an employee who has been working between three and six months. First, the employee engaged in a working test who has served at least three but less than six months of the working test can be removed only with prior board approval. The grounds for removal of these employees are inability or unwillingness to perform the duties of the position, or habits and dependability that do not merit continued employment. La.R.S. 33:2495. Secondly, after serving a working test of at least six months the employee may be rejected by the appointing authority. That employee may appeal rejection to the board on “the grounds that he was not given a fair opportunity to prove his ability in the position.” La.R.S. 33:2495. Finally, the employee who is not specifically rejected becomes a “regular” and “permanent” employee as defined by La.R.S. 3:2473(18). The regular employee is employed during good behavior and can be discharged only for specified reasons. La.R.S. 33:2500. That employee can appeal dismissal to the board and the board must grant a hearing and investigation. La.R.S. 33:2501.
It is apparent that the legislature has carefully delineated when the board can take action and the standards to be applied according to the category into which the employee fits at the time action is taken. Moreover, statutes authorizing the imposition of penalties or sanctions are penal in nature and are to be strictly construed. Consolidated Distributors, Inc. v. United Group of National Paper Distributors, Inc., 32,431 (La.App. 2 Cir.10/27/99), 743 So.2d 862. Accordingly, it was improper for the City to demote and suspend Mr. Haacker without the prior approval of the Board. Thus, it is unnecessary for this court to consider the appellant’s other arguments as they are rendered moot by the violation of Mr. Haacker’s due process rights.
^CONCLUSION
We find that the City’s demotion and suspension of Mr. Haacker without the prior approval of the Board was in direct contravention of the plain language' of LSA-R.S. 33:2495. Therefore, we reverse the trial court and order the City to reinstate Mr. Haacker’s seniority and provide back pay retroactive to the June 23, 1998 demotion and suspension together with all interest and costs therein.
REVERSED.
APPLICATION FOR REHEARING
Before NORRIS, C.J., WILLIAMS, STEWART, KOSTELKA and DREW, JJ.
Rehearing denied.